IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

MICHELLE ROGERS                                                        PLAINTIFF

V.                       CASE NO. 3:17-CV-00070-JTK

SOCIAL SECURITY ADMINISTRATION                             DEFENDANT

**ORDER**

**I. Introduction:**

Plaintiff, Michelle Rogers, applied for disability benefits on July 24, 2014, alleging a disability onset date of June 30, 2009. (Tr. at 15). That application was denied at the initial and reconsideration levels. *Id*. After conducting a hearing, the Administrative Law Judge denied Rogers's claim. (Tr. at 26). The Appeals Council denied Rogers's request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Rogers has requested judicial review.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

**II. The Commissioner's Decision:**

The ALJ found that Rogers had not engaged in substantial gainful activity since the alleged onset date of June 30, 2009. (Tr. at 17). At Step Two of the sequential five-step analysis, the ALJ found that Rogers has the following severe impairments: diabetes mellitus, obesity, status post left leg injury, major depression, and anxiety. *Id*.

At Step Three, the ALJ determined that Rogers's impairments did not meet or equal a listed impairment. (Tr. at 18). Before proceeding to Step Four, the ALJ determined that Rogers had the

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

residual functional capacity ("RFC") to perform the full range of work at the light level, except that: (1) she cannot frequently bend, crouch, or climb; (2) she can only perform work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, involves few variables, requires little independent judgment, and the supervision required is simple, direct, and concrete; (3) and she cannot deal with the general public. (Tr. at 21)

The ALJ next determined that Rogers had no past relevant work. (Tr. at 24). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that, based on Rogers's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, specifically stamper and cleaner/polisher. (Tr. at 25). Therefore, the ALJ found that Rogers was not disabled. (Tr. at 26).

### III. Discussion:

#### A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B. Rogers's Arguments on Appeal

Rogers contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ failed to fully develop the record and that the RFC for light work exceeded her physical capabilities. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

First, it is clear that Rogers has dealt with some mental health problems for some time. She reported auditory hallucinations and panic attacks in September 2008 during a five-day inpatient stay at Mid-South Health Systems. (Tr. at 844-845). Discharge diagnosis was chronic PTSD and anxiety disorder. *Id*.

Rogers was admitted to St. Bernard's Hospital for attempted suicide on September 5, 2008. (Tr. at 520-534, 640-648). She was placed on suicide precautions. *Id*. She was discharged three days later with prescriptions for Clonazepam, Effexor, Trazadone, and Abilify. *Id*. She was urged to follow up with mental health treatment. There is no record that she did so, and on September 28, 2009, Rogers was admitted to Pemiscot Memorial Hospital for major depressive disorder, generalized anxiety disorder, poly-substance dependence, narcotic dependence, and essential hypertension. (Tr. at 373-395). Klonopin was added to her medications at discharge on October 6, 2009. *Id.*

Rogers was admitted for a three-day stay at Twin Rivers Regional Medical Center on October 17, 2009. (Tr. at 413-430). Her mental diagnosis was major depressive disorder. *Id.* Rogers treated several times in 2011 at Mid-South for mental health conditions and medication maintenance. (Tr. at 767-778). Ken Pruett, APN, stated that she met the criteria for being seriously mentally ill. (Tr. at 777-778). Her diagnoses were major depressive disorder, anxiety, and panic

disorder. (Tr. at 771-774).

On August 2, 2011, Kenneth B. Jones, Ph.D., conducted a mental diagnostic evaluation of Rogers. (Tr. at 460-468). He did not have medical information from the Administration at his disposal. *Id*. He noted it would have been helpful to have paperwork regarding her diagnostic process. (Tr. at 460). Dr. Jones noted that Rogers had not seen a counselor in the past year. *Id*. She treated her condition with medication. *Id.* The need for only conservative treatment contradicts allegations of disabling pain. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993). Dr. Jones found stable mood, appropriate affect, unremarkable speech, goal directed thought process, and no intrusive thoughts or hallucinations. (Tr. at 461). Rogers reported that she was able to work quickly and efficiently, and Dr. Jones remarked that her actual symptom severity was less than reported. (Tr. at 464). He diagnosed Rogers with mood disorder and found no limitations in adaptive functioning. *Id*.

Rogers again saw Ken Pruett several times for medication management from January to July 2012. (Tr. at 781-794). He managed her psychiatric medications, and reiterated his previous diagnoses. *Id*.

On August 24, 2012, Rogers underwent a state-agency psychological evaluation by Beth Meyer-Bulley, Psy.D. (Tr. at 483-488). Affect was anxious, but speech, thought-content, and thought-process was normal. (Tr. at 485). Rogers denied suicidal ideations and denied problems doing household chores. (Tr. at 486). Dr. Meyer-Bulley found that Rogers could sustain a reasonable degree of cognitive efficiency, and found adequate attention, memory, persistence, and pace. (Tr. at 487). Dr. Meyer-Bulley performed a second evaluation on November 15, 2013 and her conclusions were nearly identical to her first report. (Tr. at 550-555).

4

Rogers saw Mr. Pruett again in January 2013, reporting improved sleep. (Tr. at 801-802). She had cordial demeanor, logical thought process, and clear speech. *Id*. She had fair insight and judgment and was oriented times three. *Id.* Mr. Pruett suggested she return in three months. *Id*. Rogers saw Mr. Pruett again for medication management a handful of times in 2013 and 2014, observing in January 2014 that she had no significant depression or anxiety symptoms. (Tr. at 809-825).

On September 17, 2014, Rogers attempted suicide by cutting her wrists. (Tr. at 557-577). She was cooperative, attentive, and coherent, with appropriate mood. (Tr. at 566). She signed a no-harm agreement and was discharged. *Id*. She saw Mr. Pruett again in October 2014 and January 2015 for medication management. (Tr. at 836-838, 840-842). He encouraged her to see a therapist. *Id*. On March 31, 2015, Rogers reported to Pruett that her medications were working, but she had occasional anxiety and panic. (Tr. at 1030-1033). She reported good sleep and good energy level, and she had no delusions or perceptual disturbances. *Id.*

On September 2, 2015, Rogers attempted suicide again, and was admitted to Delta Medical Center. (Tr. at 959-964). She was depressed with a flat affect, but her thought process was within normal limits. (Tr. at 963). At discharge she was encouraged to seek counseling. (Tr. at 965). The record does not reflect regular treatment with a psychiatrist or mental health counseling; rather, it appears that Rogers only followed up with Mr. Pruett, APN, for medication management.

Rogers argues that the ALJ should have further developed the record regarding her mental health diagnoses. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d 828, 830-831 (8th Cir. 1994). However, it is well-settled that a claimant has the burden of proving her disability; the ALJ does not have to play counsel for the Plaintiff. *Id*.

5

The ALJ is required to recontact a treating or consulting physician or order further testing only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). Absent unfairness or prejudice, reversal for failure to develop the record is not warranted. *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

Rogers incorrectly states that the ALJ did not discuss the opinions of Drs. Jones or Meyer-Bulley. (Doc. No. 13 at 22). In fact, at page 19 of the ALJ's opinion, he discussed both Dr. Jones' report and Dr. Meyer-Bulley's report. (Tr. at 19). He also detailed Rogers's treatment with Ken Pruett, who reflected that he could not make a determination about Rogers's ability to do work-related tasks. (Tr. at 20). And the ALJ considered the opinions of two state-agency psychological consultants, who opined that Rogers could do unskilled work. (Tr. at 89, 132).

The opinions of the psychological evaluators are consistent with Rogers's history: limited mental health counseling, minimal treatment by a psychiatrist, positive response to medication, and typically normal mental status exams (mood, speech, attention, thought-process, etc. within normal limits). While she did attempt suicide on two occasions, she was discharged in stable condition. She also admitted that she could perform some household chores. With opinions from four mental health professionals and treatment notes from Mr. Pruett, the record contained adequate evidence for the ALJ's review. He based his RFC for unskilled work on a fully developed record, and he did not err in that regard.

Rogers also argues that the RFC for light work exceeded her functional abilities. In August 2011, Dr. Michelle Shelton conducted a physical consultative examination, noting a past left leg reconstruction surgery. (Tr. at 470-476). Rogers could not walk on her heels and toes or arise from

a squatting position due to leg pain, but she had normal range of motion in her extremities, normal gait and coordination, and negative straight-leg raises bilaterally. (Tr. at 474). Dr. Shelton assigned moderate limitations to walking and standing. (Tr. at 475).

On May 15, 2013, Rogers treated for a possible heart attack, attributed to uncontrolled hypertension. (Tr. at 490-491). She admitted that she was non-compliant with her hypertension and diabetes medications. *Id*. Failure to follow prescribed treatment may be used to discredit subjective allegations. *Brown v. Heckler*, 767 F.2d 451, 452 (8th Cir. 1985). Rogers was encouraged to exercise. (Tr. at 491). A physician's recommendation to exercise suggests that claimant has an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009).

From June through November 2013, Rogers was treated four times at East Arkansas Family Health Care Center for hypertension, diabetes, and diabetic neuropathy. (Tr. at 536-549). Her extremities showed no clubbing or edema, and Rogers said she was walking an hour daily, which does not indicate she had disabling leg pain. (Tr. at 536). She was prescribed Lisinopril, Metformin, and Lyrica. (Tr. at 537-538).

Rogers reported to Northeast Arkansas Clinic on November 19, 2014 with shooting pain in her legs. (Tr. at 849-855). She had a normal range of motion with no tenderness in her extremities. (Tr. at 849). Her gait was normal. (Tr. at 850). Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

Over the next two years, Rogers saw doctors for neuropathy and back pain. (Tr. at 850-861, 1044-1049, 1052-1057, 1058-1068). She was treated conservatively with medications, and urged to follow a strict diabetic diet. *Id.*

An RFC for light work contemplates alternating sitting, walking, and standing, and Rogers has not shown that this profile is beyond her capabilities. She did not pursue pain management, injections, physical therapy, or other aggressive treatments. State-agency medical consultants reviewed the record and suggested and RFC for light work (Tr. at 86, 112), and the ALJ gave those opinions great weight because they correlated with the mild clinical findings and conservative treatment. Complaints of pain must be supported by objective evidence: subjective complaints "may be discounted if there are inconsistencies in the evidence as a whole, and the ALJ may properly rely upon discrepancies between [a claimant's] allegations of pain and her treatment history, medicinal selections, and daily activities in disregarding her subjective complaints." *Davis v. Apfel*, 239 F.3d 962, 968 (8th Cir. 2011). Indeed, Rogers had no problem with personal care and admitted to Dr. Meyer-Bulley that she could perform household chores. (Tr. at 263-265, 486). Such daily activities undermine her claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). The ALJ properly considered the entire record in assigning the RFC for light work. The RFC did not exceed Rogers's functional abilities.

## IV. <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision to deny benefits. The record was fully developed and the RFC did not exceed Roger's functional capacity. The finding that Rogers was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 16th day of April, 2018.

_____
UNITED STATES MAGISTRATE JUDGE